UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA                        :

                       Plaintiff,             :

                                                                               **OPINION AND ORDER**
      -against-                                    :

JOHN RIGAS and TIMOTHY RIGAS                    :       02 Cr. 1236 (LBS)

                      Defendants.           :
----------------------------------------------------------------x

SAND, J.

I.      Procedural Background

      A.      On June 27, 2005 after a jury trial of over four months resulted in the conviction of defendants on 18 counts, this Court imposed a sentence of 15 years incarceration on John Rigas and 20 years on Timothy Rigas.

      On May 24, 2007, the Court of Appeals affirmed the conviction on all but one count (Count 23) which it reversed and "<u>remanded</u>" for an entry of <u>acquittal</u> on Count Twenty-Three "and for resentencing." 490 F.3d 208, 239 (2d Cir. 2007)

      Count 23 was a charge of bank fraud involving the OCH Co-Borrowing agreement. The Court of Appeals held that "the evidence submitted to a jury cannot support a finding that any misrepresentations regarding [this agreement] were material. 490 F.3d at 236

      With regard to Count 22 involving the OCH Co-Borrowing agreement which provided that a higher interest rate would be charged if the leverage ratio was above 5.0, the Court of Appeals found the evidence was sufficient to establish that the misrepresentations were material and affirmed the conviction on Count 22. Id.

      This Court had sentenced John Rigas to 15 years on Counts 22 and 23 to run concurrently with each other and concurrently with Counts 1 and 2 through 16. Timothy Rigas was sentenced to 20 years on Counts 22 and 23 to run concurrently with all counts.

      The Rigas's applied to the Supreme Court for Certiorari which was denied on March 3, 2008.

      In the interim, between the Court of Appeals decision and the resentencing hearing, defendants moved for a new trial pursuant to F.R. Crim. Proc. 33 on the grounds that

1

newly discovered evidence in the form of testimony given by the government's central witness (James Brown) at a civil trial demonstrated that his testimony at the criminal trial was perjurious. The Court denied the motion on November 20, 2007, holding that:

> "We conclude that in the context of the entire trial and considering the challenged testimony in its entirety, rather than as isolated and inapposite comparisons of Brown's testimony at trial with subsequent testimony as to different and more specific questions, the jury's verdict would not have been different had it considered the allegedly conflicting testimony."

No new PSR was prepared for the resentencing, but by letter dated April 29, 2008, prepared at the Court's request (Court Ex. A) the probation officer opined:

> "Inasmuch as none of the counts of conviction carries a lifetime term of imprisonment, the guideline range of life is effectively capped by the aggregate of the statutory maximum terms of the counts of conviction. With the dismissal of Count 23 (which carried a 30-year maximum), this aggregate amount is now 185 year (as opposed to 215 years).
>
> The dismissal of Count 23 has no bearing on the term of supervised release, since such terms must run concurrently. The special assessment, however, must be reduced by $100.00."

The rehearing on sentencing took place on May 22, 2008.

At that hearing John Rigas and Timothy Rigas waived the right to be physically present in open court when the court pronounces the amended sentence and agreed that this Court may file an opinion and order without further in-court proceedings. See Transcript, May 22, 2008, pp113-116.

II.   The Issues

    A.   Scope of hearings.

Defendants relying on U.S. v. Quintieri, 306 F.3d 1217(2nd Cir. 2002) take the position that the consequence of the remand is to open up for de novo review all counts of conviction because the reversal was based on a "conviction error" not a "sentencing error", i.e. an error other than use of an improper guideline or an error in the sentencing calculation. Defendants assert that this is so even if there is no factual nexus between the "conviction error" and other counts which were affirmed. Defendants further contend that they may as part of the de novo resentencing rely on evidence that was not introduced during the trial and are not precluded from advancing claims which were available to defendants but not raised at the time of

the original sentencing or appeal.

The Government believes that de novo review of all counts is not required by Quintieri and is inappropriate on the facts of this case and that the usual rules of waiver and "rule of the case" preclude the raising of previously abandoned issues. Mindful of the fact that defendants may be expected to appeal every issue the Government urges that this Court make alternative findings based on either de novo or limited review. Transcript, May 22, 2008, p. 94.

In Quinteiri the Court of Appeals discussed an issue which arises where, as here, the appellate court remands for resentencing without explicitly stating whether limited or de novo review is intended (306 F.3d at 1226-1281). The Court contrasted those cases where a sentencing error has little or no impact on counts unaffected by the error and those cases in which:

> "A district court's sentence is based on the constellation of offenses for which the defendant was convicted and their relationship to a mosaic of facts, including the circumstances of the crimes, their relationship to one another, and other relevant behavior of the defendant. When the conviction on one or more charges is overturned on appeal and the case is remanded for resentencing, the constellation of offenses of conviction has been changed and the factual mosaic related to those offenses that the district court must consult to determine the appropriate sentence is likely altered. For the district court to sentence the defendant accurately and appropriately, it must confront the offenses of conviction and facts anew."

We turn then to the application of these principles to this case. As noted defendants were tried and convicted on 18 counts. Count one alleged a conspiracy to commit securities fraud, conspiracy to make and cause to be made false statements in filings with the SEC and conspiracy to commit bank fraud under 18 U.S.C. § 37. Counts two through 16 alleged securities fraud under 15 U.S.C. §§ 78j(b) and 78 ff and 18 U.S.C. § 2) . The last two counts, counts 22 and 23 alleged bank fraud under 18 U.S.C. 1344.

As to John Rigas the Court had imposed a sentence of 15 years and as to Timothy Rigas a sentence of 20 years on counts 22 and 23 to run concurrently with each other and with all other counts.[1]

---

[1] The maximum sentences for the various counts on the facts of this case bear little relationship to their importance. Thus count one, the conspiracy count, carries a maximum sentence of only five years but it was the key count of the case. Once this Court had determined the total non-guideline sentence the allocation of sentences to the various counts was an arbitrary allocation based on the maximum sentences allowable.

These circumstances, in our opinion, cause this resentencing to bear greater resemblance to the "sentencing error" cases discussed in Quintieri than to the "conviction error" cases where the reversal of one count casts the other counts into a new light and the factual relationship to those offenses that the district court must consult to determine the appropriate sentence is "likely altered."

Counts 22 and 23 were quite different from the other counts of the indictment. The scheme alleged in those two counts was intended to lower the banks interest charges to Adelphia . The intended victims of these schemes were the banks, not the intended investor/stockholder victims of the other deceptive practices alleged in the indictment.

In arguing that the Court should review de novo all of the counts in the case defendants, despite their voluminous submissions, make no attempt to show a nexus between Count 23 and the affirmed counts that would impact on sentencing considerations. Rather they rely on random passages in Quintieri and on a mechanical test: if the error is a "conviction" error not a sentencing error a de novo review of all counts is required regardless of the context.

As an example of an instance in which in this case reversal of one count would have made appropriate a reconsideration of all other counts we point to what would be before the Court if the reversed count had been count one (the conspiracy count). All that defendants say about the need for de novo review of other counts would be valid because the substantive counts would then be viewed in a radically different light if they had not been in furtherance of an overall conspiracy.[2]

We conclude that de novo review of all counts is not required. The question before the Court for limited resentencing is: "What impact on sentencing does it have that defendants were found guilty of only one count of bank fraud rather than two because of the absence of sufficient evidence of materiality on one of the counts?" We believe that the reversal of count 23 has minimum impact on the §3553 sentencing considerations. We reduce the sentence on count 22 to reflect this view.

III.   De Novo Review of Other Counts

Alternatively as urged by the government, we treat herein some of the specific challenges made by defendants to counts other than Counts 22 and 23. We have considered all of defendants' claims and find that none of them warrant revision of the sentence previously

---

[2]Indeed when the jury acquitted the defendant Michael Rigas on the conspiracy count and could not agree on the other counts his case was severed and has been resolved before another judge.

imposed on the non-bank fraud counts[3].

Much of defendants' argument for a lower overall sentence is an attack on the government's principal witness James Brown, and the defense of reliance on professional advisors, the Adelphia accountants, Deloitte and Touche, and attorneys Buchanan Ingersoll. Defendants rely heavily on testimony and documents introduced in civil litigation which followed the criminal case. Having failed in their effort to obtain a new trial via a rule 33 motion, they now seek to utilize these arguments in the guise of resentencing considerations. But of course remand for resentencing is not an invitation to retry the case.

The defense of reliance on professional advisors was asserted at the trial and failed to persuade the jury. The Court of Appeals observed, 490 F.3d at 214, fn 4.

> 4. Defendants continue to assert they were acting on the advice of inestment advisors with only the best intentions of Adelphia in mind. We do not think these arguments preclude Defendant's criminal liability.

Although defendants give lip service to the nature of these proceedings ("the convictions of John and Tim Rigas can not be revisited at this time." Resentencing Memorandum of John Rigas and Timothy Rigas, p. 1) the overall thrust of their claims is that the Rigases engaged in no criminal conduct but were themselves victims.[4] Although we recognize that a de novo review on resentencing may include consideration of newly proferred evidence it is not intended to be a new trial of issues which have been known to defendants and previously argued to the district and appellate courts .

The roles of Deloitte and Touche and Buchanan Ingersoll were the subject of considerable testimony at the trial and initial sentencing. Although defendants now proffer other instances of alleged inconsistencies or awareness by professional advisors of what was being done and good intentions they do not change the basic nature of the relationship which existed over the years between the defendants, Adelphia and their professional advisors. Nor does it overcome the verdict of guilt on count one (conspiracy).

<u>Loss causation</u>

---

[3]We discuss some of these claims briefly herein. Others such as challenges to guideline enhancements related to the number of victims, obtaining more than $1,000,000.00 in gross receipts and being leaders of criminal activity are totally without merit and require no further discussion.

[4]This approach is consistent with the statements made by Timothy and James Rigas at the outset of the sentencing rehearing.

Defendants assert that the laws with respect to loss causation have changed since the trial and initial sentencing and that the 26 level guideline enhancement was erroneous. Defendants assert that United States v. Rutkoske, 506 F.3d 170, (2d Cir. 2007) imported into the criminal law the standards for loss causation which prevail in civil litigation.

The Government replies by asserting that defense counsel made the same argument advanced here at the initial sentencing (Government Re-Sentencing Memorandum p.11) based on cases which anteceded Rutkoske and the trial. But the Government further argues "On direct appeal, however, defendants raised absolutely no challenge to their sentences." Therefore the Government asserts the loss issues are the law of the case and defendants have waived this argument by failing to present it on direct appeal.

We need not however decide the waiver issue because on the merits defendants claims are transparently invalid. Defendants assert that the Government must prove loss causation with precision and they produce an expert report to demonstrate that the proof of loss in this case did not satisfy that standard. But as the court said in the Rutkoske

> "Determining the extent to which a defendant's fraud, as distinguished from market or other forces, caused shareholders' losses inevitably cannot be an exact science. *See Ebbers*, 458 F.3d at 127 ("no easy task"). The Guidelines' allowance of a "reasonable estimate" of loss remains pertinent. And cases might arise where share price drops so quickly and so extensively immediately upon disclosure of a fraud that the difference between pre- and post-disclosure share prices is a reasonable estimate of loss caused by the fraud." Rutkoske, 506 F.3d 179-180

Here, as the Court of Appeals summarized the facts:

> "Adelphia Communications Company ("Adelphia") announced its 2001 Fourth Quarter and Full-Year results in a March 27, 2002 press release. In a footnote on the final page of that press release, Adelphia, at the recommendation of its accounting firm, Deloitte & Touche, first disclosed publicly that it had approximately $2.2 billion in liabilities not previously reported on its balance sheet. On the day of disclosure, Adelphia's stock price plummeted by about twenty-five percent to $20.39; by the time the stock was delisted in May 2002, the price per share was $1.16. The company filed for bankruptcy in June 2002, wiping out all shareholder value." 490 F.3d at 212.

To establish loss causations to meet the guideline requirement for a 26-level guideline enhancement (U.S.S.G. § 2B1.1) the Government need only demonstrate that defendants' criminal conduct caused a loss of at least one hundred million dollars.

6

The governments calculates that: "Excluding Class A common
shares owned by the Rigas family (approximately 23 million
shares), there were approximately 205,416,284 shares of Adelphia
Class A common stock outstanding on March 27, 2002. In order
for there to be more that $100 million in losses to the common
equityholders only, there would need only be a reduction in market
price, caused by the criminal conduct for which the defendants
stand convicted, of merely $0.50, resulting in a loss of
$102,708,142. Moreover, this figure represents only equity
losses, not debt. To illustrate, were the $0.50 loss figure cut in half
and divided between equityholders and bondholders, the
Government would need only prove that each class of victims
suffered a loss of $0.25 per share or bond in order to sustain $100
million in losses." Gov't Br., p. 19.

The Government further notes: "Adding all of these loss figures
together – of equityholders, bondholders, and Adelphia – there can
be no legitimate dispute that even using the "grossest calculation,"
*see Ebbers*, 458 F.3d at 128, the total loss is greater than $100
million necessary to establish the 26-level enhancement under
U.S.S.G. § 2B1.1. Indeed, there are dozens of Adelphia security
holders whose losses alone exceed $100 million, including the
Tow Charitable Trusts, which submitted a letter to the Court, and
the funds controlled by W.R. Huff, which objected to the financial
settlement in this case. As the Court is well aware, Mr.Tow
appeared at the initial sentencing and described the devastating
impact of the losses from the Adelphia shares owned by his
charitable and family trusts. (June 20, 2005 Sent. Tr. pp. 4-9).
The foregoing demonstrates that there are many, independent
evidentiary bases upon which the Court can find that a "reasonable
estimate" of the economic loss in this case far exceeds $100
million." Gov't. Br. pp 22-23 (footnote omitted).

Defendants' challenges to the loss calculation need not long detain us.
Defendants point to other loss factors (e.g. the adverse news about ABIZ and the general market
decline for cable TV companies) but the numbers here are of such scope , the immediate press
reaction to the disclosure of over two billion dollars in undisclosed debt so compelling that the
claim that there was not a reasonable calculation of a loss of at least $100 million borders on the
frivolous and is not made any less meritless because it is the subject of "expert" analysis.

Defendants seek to separate the loss occasioned by the disclosure of the $2 billion
of unrecorded debt from other events such as the failure of Adelphia to file a timely Form 10-K
as if this circumstance were totally separate from the debt nondisclosure. Of course any loss
associated with the 10-K non-filing is directly related to the non-disclosure by the defendants of

7

the unrecorded debt. In any event the market did not decline when Adelphia announced it was not filing a timely 10-K.

The defendants raise for the first time, the claim that they are entitled to a $715 million loss offset for the moneys paid by the Rigas Family entities as part of the settlement with the Government concerning restitution and forfeiture. Assuming arguendo that the argument is preserved, it is without merit. The Guideline provisions relating to loss offsets have reference to payments made to victims prior to the prosecution and conviction of the perpetrators. Nor are Defendants entitled to an offset on the theory that the payments made as part of the forfeiture settlement were of collateral for the debt. "The collateral in this case was pledged to the banks who made the loan under the co-borrowing agreement. The collateral was not pledged to Adelphia, nor to Adelphia's security holders (equity or debt)." See Gov't. Br. p. 33.

## **SUMMARY**

Defendants urge that we approach resentencing in a holistic fashion and in our alternative holding we have done so. We find no basis for a reduction of sentence which is broader than the relatively minor adjustment occasioned by the reversal of Count 23. Indeed we find that the sentence previously imposed was fully justified under all of the circumstances.

Defendants claim that the prosecution and verdict reflect a "post Enron" hysteria ignores the fact that a conscientious jury after four months of trial acquitted one defendant on all counts and Michael Rigas on the conspiracy count. The strength of the Government's case, not any over reaction to events elsewhere, explain the guilty verdicts and this Court's prior sentences.[5]

### Conclusion and Resentence

Having found nothing in defendant's overall claims to warrant a general sentence reduction and defendants having made no claim that the reversal of count 23 for failure of the prosecution to prove materiality impacts on the strength or substance of the convictions on the 17 other counts as to which the Court of Appeals noted there was ample evidence, we return to the question before the Court: What sentence alteration, if any, would fairly and adequately reflect the reversal of the conviction on count 23 the sentence for which was concurrent with that on count 22 which was affirmed. We believe that a minimal adjustment is appropriate. The reversal on count 23 did not alter the guidelines. More importantly it in no meaningful way

---

[5]The Court of Appeals in rejecting objections based on receipt of questioned evidence noted "these defendants would have to show that improperly admitted evidence had a substantial effect on the jury's verdict". The Court wrote "Given the weight of evidence supporting the jury's verdict on each charge we conclude that they have not done so." 490 F.3d at 239.

altered the seriousness of defendants' crimes, nor the suffering which their conduct inflicted on so many people.

As to John Rigas we reduce the sentence on Count 22 from fifteen (15) years to twelve (12) years to run concurrently with counts 1 and 2 through 16 and reduce the sentence on counts 2 - 16 from ten (10) years to seven (7) years each (to effect an overall reduction of three (3) years on the total sentence).

The sentence will be:

Count 1:      5 years
Counts 2-6:   7 years to run concurrently with each other but consecutively to Count 1.
Count 22:     12 years to run concurrently with counts 1 and 2 through 16.
Total sentence 12 years.

As to Timothy Rigas we similarly reduce the sentence on Count 22 from 20 years to 17 years and adjust the allocation of sentences so as to effect a three year reduction in the original 20 year sentence.

Thus, as to Timothy Rigas the sentence will be :

Count 1:      5 years
Count 2:      10 years consecutive to count 1.
Count 3:      5 years concurrent to counts 1 and 2.
Counts 4-16:  10 years concurrent with each other and counts 1, 2 and 3
Count 22:     17 years to run concurrently with all counts.
Total sentence 17 years.

The sentence is a non-guideline sentence and as we explained previously the allocation among the various counts is a random allocation not intended to reflect the seriousness of each count.

We will amend the prior judgment to reflect the above sentences, eliminate count 23 as a count of conviction and reduce the assessment from $1,800.00 to $1,700.00. (We were advised at oral argument that the $100.00 has already been refunded to the defendants.)

9

All other terms and conditions of the original sentence remain unchanged.

SO ORDERED.

Dated: June 24, 2008
      New York, New York

_____
U.S. District Judge